EVANDER, J.
Sandra Albanese (Wife) appeals from a temporary order granting Maxwell Alba-nese (Husband) permission to have the parties’ minor children relocate with him to the New York City area. Wife argues that not only does the trial court’s order *533 fail to include a finding that relocation would be in the children’s best interest, but that there was a lack of competent, substantial evidence to support such a finding. We agree and, accordingly, reverse.
The parties separated on or about February 1, 2013, at which time Husband filed his petition for dissolution of marriage. On April 17, 2013, the trial court entered an agreed order providing for the parties to have equal time sharing with their two sons (ages six and five). Three months later, Husband filed an amended petition for dissolution of marriage seeking, inter alia, permission to relocate his residence with the parties’ minor children to the New York City area.[1] In support of his request, Husband alleged that he was a student in good standing at the Touro College of Pharmacy in New York City and that he desired to return to school for the semester commencing in January 2014. Husband further alleged that the relocation would be in the best interest of the minor children because he would “be able to provide for all of the minor children’s needs and furnish an excellent elementary education for the children” and would “be able to complete his own pharmaceutical education, thereby greatly increasing his earning capacity which would translate to significant economic benefits for the minor children.”
Wife filed a detañed written objection to Husband’s relocation request and the matter proceeded to a temporary hearing on November 12, 2013.
Both parties testified at the hearing. Suffice it to say, their testimony conflicted on numerous points. The facts as set forth below are taken almost exclusively from Husband’s testimony.
In August 2012, Husband moved to New York City to attend Touro College of Pharmacy. Husband successfully completed the first semester of his studies before returning to Florida in February 2013 “to attend to his children’s needs.” He desired to return to Touro to complete the school’s pharmacy program. His anticipated graduation date would be May 2017. Husband’s plan was to live with his two sons in a single-family house in a middle-class neighborhood in East Rutherford, New Jersey. Husband testified that the children would attend Lincoln Elementary School and that he had spoken with the principal once and “by e-mail with the prospective teachers once.” He had also “looked at” the school online. Husband did not intend to obtain employment while attending Touro so that he would be able to properly care for the chüdren. His mother, who lived near the parties’ marital residence in Brevard County, had agreed to move to New Jersey to assist Husband, when needed, in caring for the children. Notwithstanding his intent to not seek employment, Husband advised the trial court that he would be willing to pay all transportation costs for the children to spend time with their mother in the summer, during spring and winter school breaks, and on extended holiday weekends. His testimony reflected that he would pay for his living expenses, and the children’s transportation costs, from his $720/month VA benefits and his student loan proceeds.[2] Husband further believed that relocation was necessary to improve his economic circumstances.
Husband went on to testify that the children could experience museums, histor *534 ical monuments, theaters, plays, shows, parks, and major sporting events in the New York City area. Although Husband opined that he believed relocation would be in the best interest of the children, he provided little or no evidence as to the children’s educational, recreational, and cultural opportunities in Florida. For example, there was no evidence reflecting that the children would receive a better education in East Rutherford, New Jersey than they had, or would receive in Brevard County.
Additionally, Husband provided little or no evidence as to the strength of the bond between Wife and the children and the potential emotional effect on the children from the proposed relocation. As a result, Wife’s testimony on these points was largely uncontroverted. Wife testified that she had a close, loving relationship with her sons, and that relocation would cause the children great emotional harm.
In addition to receiving live testimony from the parties and Wife’s adult daughter, the parties agreed that the trial court could consider the custodial evaluation report prepared by Dr. Robert Lehton. It would be an understatement to say that Dr. Lehton was critical of both parties’ behavior. Indeed, he opined that their divorce was “the most adversarial, chaotic, and destructive process between a couple that [he had] participated as an examiner in the last 43 years.” Dr. Lehton found that neither parent was capable of demonstrating the disposition to honor a time-sharing schedule, that the environments in both households was “chaotic,” and that both parents lacked veracity in their statements and history. Dr. Lehton did conclude that Husband was more likely to provide structure in the children’s lives and less likely to delegate parenting responsibilities to third persons. Dr. Lehton believed that one of the two children had a closer relationship with Husband than Wife, but nevertheless recommended an equal time-sharing arrangement. He also, with little elaboration, recommended against relocation of the children at the present time.
On December 4, 2013, the trial court entered an order granting Husband’s request to temporarily relocate with the minor children. In its order, the trial court found that the children clearly had a bond with each of their parents, but that the children had been affected negatively by their parents’ combative and adversarial divorce action. The trial court acknowledged that relocation would change the relationship between the boys and their mother but found that Husband was likely to comply with a substitute time-sharing arrangement.[3] In granting Husband’s relocation request, the court stated:
The relocation, if permitted, will allow the father to continue his interrupted education. He has about three and a half years more to complete his pharmacy degree. Upon completion, his earning capacity will be greatly enhanced. The father’s school schedule would be similar to the children’s school schedule, which would allow him to spend significant time assisting them with their homework, and provide the children with a consistent routine in their household.
The undisputed evidence indicates that the Father began attending pharmacy school in New York in the fall of 2012. He returned home to Florida on several occasions in the fall, and then took a leave of absence from the school *535 for the next term based on the turmoil that was happening in the parties’ marriage and in their home. He testified that he desired to relocate so that he could resume his studies, and that he desired to have the boys relocate with him so that he can be available to them on a daily basis. The court finds that this relocation is sought in good faith.
The trial court did acknowledge that Dr. Lehton did not recommend relocation and that it “ha[d] concern regarding the emotional health of these children, and their continued relationship with both of these parties.” Notably, the order was devoid of any finding that relocation would be in the best interest of the children.
Section 61.13001(6)(b), Florida Statutes (2013), authorizes a trial court to grant a temporary order permitting relocation of a child. In the case of a contested relocation, the Legislature has determined that “[a] presumption in favor of or against a request to relocate with the child does not arise if a parent or other person seeks to relocate and the move will materially affect the current schedule of contact, access, and time-sharing with the nonrelocating parent or other person.” § 61.13001(7), Fla. Stat. (2013). In reaching its decision regarding a proposed temporary or permanent relocation, the court is required to consider the following:
(a) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent or other person proposing to relocate with the child and with the nonrelocating parent, other persons, siblings, half-siblings, and other significant persons in the child’s life.
(b) The age and developmental stage of the child, the needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(c) The feasibility of preserving the relationship between the nonrelocating parent or other person and the child through substitute arrangements that take into consideration the logistics of contact, access, and time-sharing, as well as the financial circumstances of the parties; whether those factors are sufficient to foster a continuing meaningful relationship between the child and the nonrelocating parent or other person; and the likelihood of compliance with the substitute arrangements by the relocating parent or other person once he or she is out of the jurisdiction of the court.
(d) The child’s preference, taking into consideration the age and maturity of the child.
(e) Whether the relocation will enhance the general quality of life for both the parent or other person seeking the relocation and the child, including, but not limited to, financial or emotional benefits or educational opportunities.
(f) The reasons each parent or other person is seeking or opposing the relocation.
(g) The current employment and economic circumstances of each parent or other person and whether the proposed relocation is necessary to improve the economic circumstances of the parent or other person seeking relocation of the child.
(h) That the relocation is sought in good faith and the extent to which the objecting parent has fulfilled his or her financial obligations to the parent or other person seeking relocation, including child support, spousal support, and marital property and marital debt obligations.
(i) The career and other opportunities available to the objecting parent or other person if the relocation occurs.
(j) A history of substance abuse or domestic violence as defined in s. 741.28 *536 or which meets the criteria of s. 39.806(l)(d) by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(k) Any other factor affecting the best interest of the child or as set forth in s. 61.13.
Id. The parent wishing to relocate has the burden of proving by a preponderance of the evidence that relocation is in the best interest of the child. § 61.13001(8), Fla. Stat. (2013).
In the instant case, we conclude that the trial court erred in granting Husband’s relocation request because of the lack of competent, substantial evidence to support a finding that relocation was in the children’s best interest. See Eckert v. Eckert, 107 So.3d 1235, 1237-38 (Fla. 4th DCA 2013) (trial court’s decision on relocation request will be affirmed only if statutory findings are supported by substantial competent evidence; trial court abused its discretion in permitting relocation where there was no competent substantial evidence to support it); Muller v. Muller, 964 So.2d 732, 734-35 (Fla. 3d DCA 2007) (trial court abused its discretion in granting relocation request where record was devoid of corroborating facts supporting nearly every subsection of relocation statute). We find it significant that the primary reason(s) given by the trial court for its decision is that Husband will be able to continue his interrupted education and, if successful in attaining a pharmacy degree, will have a greatly enhanced earning capacity. While we do not disagree with this finding by the trial court, we would observe that any financial benefit to the children would not accrue for at least three and one-half years and that Husband already has two bachelor’s degrees — one in molecular microbiology and one in international finance and economics — that have apparently not resulted in a “high-paying” salary.[4]
While the evidence might have supported a finding that a move to the New York City area was in Husband’s best interest, it was insufficient to establish that it was in the children’s best interest. Berrebbi v. Clarke, 870 So.2d 172, 173 (Fla. 2d DCA 2004) (relocation statute directs court to consider best interests of child, not just petitioning parent; error to permit relocation where move would only be in best interest of parent). The evidence was undisputed that Wife had a strong bond with her sons; yet, the trial court made no finding regarding the feasibility of preserving the relationship between Wife and her sons through substitute time-sharing arrangements. Additionally, Wife’s testimony that the boys would suffer emotional harm from the relocation was not addressed by the trial court other than to acknowledge its concerns regarding the emotional health of the children. Furthermore, there was no finding (and little or no evidence) that the relocation would enhance the general quality of life or educational opportunities for the minor children.
Because Husband failed to present competent, substantial evidence that the proposed relocation was in the best interest of the parties’ two minor children, reversal is required.
REVERSED.
COHEN and WALLIS, JJ., concur.

. The two children had resided their entire lives in Brevard County, Florida.

. At the time of the hearing, Husband already had approximately $130,000 to $150,000 in student loans.

. Wife was granted time sharing with the boys in Florida for their spring break and all but two weeks during their summer break. Husband would be responsible for the accompanying costs of transportation.

. At the time of the hearing, Husband was working part-time as a certified pharmacy technician earning $9.40/hour.